896 So.2d 931 (2005)
CITY OF BARTOW and Commercial Risk Management, Appellants,
v.
Darlene BREWER, Appellee.
No. 1D04-0196.
District Court of Appeal of Florida, First District.
March 4, 2005.
*932 Curt L. Harbsmeier, Esquire, Sara Reyes, Esquire and Viviana I. Pedroso, Esquire of Harbsmeier, DeZayas, Appel & Harden, LLP, Lakeland, for Appellants.
Mark G. Capron, Esquire of Smith, Feddeler, Smith & Miles, P.A., Lakeland, Susan W. Fox, Esquire of Fox & Loquasto, P.A., Tampa and Wendy S. Loquasto, Esquire of Fox & Loquasto, P.A., Tallahassee, for Appellee.
PER CURIAM.
The City of Bartow and Commercial Risk Management (E/C) appeal a final compensation order which awards Darlene Brewer continued treatment for her shoulder injury, and treatment with Dr. Keith Simon, an orthopedist, for her uncontested knee injury.[1] We affirm the award of continued treatment for Ms. Brewer's shoulder injury, but reverse the determination that she was entitled to treat with Dr. Simon for her knee injury.
The E/C argue that Ms. Brewer did not prove that her shoulder injury was work-related, but do not address the fact that the judge of compensation claims (JCC) found that the 120-day rule barred the E/C from disputing compensability.[2] Only in the reply brief do they argue that section 440.20(4), Florida Statutes, does not control.
Failure to raise this point in the initial brief precludes our considering it at this juncture. See Fla. R.App. P. 9.210(b)(1), (5) (2004); Fla. Emergency Physicians-Kang & Assoc., M.D., P.A. v. Parker, 800 So.2d 631, 636 (Fla. 5th DCA 2001) ("`[I]n order to obtain appellate review, alleged errors relied upon for reversal must be raised clearly, concisely, and separately as *933 points on appeal.'... We do not address issues not clearly set out in the issues on appeal.") (quoting Singer v. Borbua, 497 So.2d 279, 281 (Fla. 3d DCA 1986)); Lester v. Arb, 658 So.2d 583, 584-85 n. 2 (Fla. 3d DCA 1995) (stating "there is utterly no authority for the proposition that a new point on appeal can be raised in such an offhand fashion for the first time in the middle of a brief relating to a different point," where the argument "[wa]s not presented ... as a separate ground for reversal  but, in context, in support" of another issue on appeal); F.M.W. Props., Inc. v. Peoples First Fin. Sav. & Loan Ass'n, 606 So.2d 372, 377 (Fla. 1st DCA 1992) ("[E]ach matter upon which an appellant relies for reversal must be argued under an appropriate issue presented for review. Argument which addresses a point not set out in the issue on appeal will not be considered.").
The E/C also argue that the JCC had no authority to order treatment for Ms. Brewer's knee injury with Dr. Keith Simon. Ms. Brewer made two requests to change orthopedic physicians. In the first, she asked for "an orthopedist in the managed care network other than Dr. Fisher." As the JCC found, the E/C responded with a list of every physician within the managed care network. Ms. Brewer then filed a second request: "The injured employee seeks a change in her orthopaedic physician. Her current physician is Maury Fisher, M.D." In response, the E/C gave her a list of three orthopedic physicians. Despite the E/C's responses to her requests, Ms. Brewer contended in the pre-trial stipulation that she was entitled to treat with the orthopedist of her choice, Dr. Simon, who did not appear on the lists the E/C provided to Ms. Brewer.[3]
Section 440.13(2)(c), Florida Statutes, does not authorize the JCC to order treatment with a specific physician, where the E/C promptly offers qualified alternatives. See § 440.13(2)(c), Fla. Stat.; Shea v. Durty Two, Inc., 738 So.2d 510, 512 (Fla. 1st DCA 1999) ("If the JCC determines the E/C provided such `medically necessary remedial treatment, care, and attendance' within a reasonable time period, authorization of an alternative physician ... would not be appropriate."); Soriano v. Gold Coast Aerial Lift, Inc., 705 So.2d 636, 638 (Fla. 1st DCA 1998) ("[T]he E/C has the right to select a treating physician for a claimant, and the claimant may seek substitution of a physician of claimant's choice only if the E/C fails to provide the treatment or care requested within a reasonable time.").
This is not a case where the E/C had no basis for "deauthorizing" Dr. Simon as the treating physician for Ms. Brewer's knee injury. Dr. Simon never treated Ms. Brewer for her knee injury, only for the shoulder injury she sustained in a separate accident. Compare Stuckey v. Eagle Pest Control Co., 531 So.2d 350, 351 (Fla. 1st DCA 1988) ("[O]nce an injured employee *934 establishes a satisfactory physician-patient relationship with an authorized physician, the e/c may not deauthorize that physician without the employee's prior agreement or without approval of a[JCC].... In this situation the focus should be on the question of why an authorized physician should no longer provide care, thereby severing an established physician-patient relationship.") (emphasis supplied).
Affirmed in part, reversed in part, and remanded for further proceedings.
BENTON, LEWIS, and THOMAS, JJ., concur.
NOTES
[1] Ms. Brewer made separate workers' compensation claims for her shoulder injury and knee injury. Ms. Brewer claimed that the shoulder injury was work-related and occurred on January 31, 2001. The knee injury, the compensability of which was undisputed, occurred on May 13, 1998.
[2] The 120-day rule is contained in section 440.20(4), Florida Statutes:

If the carrier is uncertain of its obligation to provide benefits or compensation, it may initiate payment without prejudice and without admitting liability. The carrier shall immediately and in good faith commence investigation of the employee's entitlement to benefits under this chapter and shall admit or deny compensability within 120 days after the initial provision of compensation or benefits. Upon commencement of payment, the carrier shall provide written notice to the employee that it has elected to pay all or part of the claim pending further investigation, and that it will advise the employee of claim acceptance or denial within 120 days. A carrier that fails to deny compensability within 120 days after the initial provision of benefits or payment of compensation waives the right to deny compensability, unless the carrier can establish material facts relevant to the issue of compensability that it could not have discovered through reasonable investigation within the 120-day period.
§ 440.20(4), Fla. Stat. (2000).
[3] Ms. Brewer's knee injury occurred on May 13, 1998, and her requests for a change of physician were made between July 2002 and February 2003. At the time Ms. Brewer's requests were made section 440.13(2)(f), Florida Statutes (2002), provided that "the carrier shall give the employee the opportunity for one change of physician ... for any one accident. The employee shall be entitled to select ... from ... not fewer than three carrier-authorized physicians...." See ch.2001-91, § 12, at 773, Laws of Fla. (creating right to one-time change of physician by adopting section 440.13(2)(f), Florida Statutes). No statute granting a right to a one-time change of physician existed at the time Ms. Brewer injured her knee at work. Although section 440.13(2)(f) became effective prior to her change-of-physician requests, even under the 2002 statute, the E/C's responses to Ms. Brewer's requests  both times approving the change and providing her with at least three carrier-authorized orthopedists  were appropriate.