THOMAS, J.
 

 In this workers’ compensation appeal, we must address whether a statute providing for the use of an Expert Medical Ad-visor applies retroactively. Here, Claimant challenges the order of the Judge of Compensation Claims (JCC) on three grounds: (1) the JCC erred in applying sections 440.13(5) and (9), Florida Statutes (2003), to this 1982 accident; (2) the JCC erred in denying Claimant’s request for a one-time change in treating psychiatrist; and (3) the JCC erred in denying Claimant’s claim for non-professional attendant care. We affirm the second issue without further comment, finding that the JCC correctly applied the relevant law. We affirm in part and reverse in part on issues one and three, finding that section 440.13(9), cannot apply retroactively.
 

 Facts and Procedural History
 

 In 1982, Claimant was brutally assaulted, kidnapped and shot at her workplace. Since that time, she has received indemnity and medical benefits.
 

 In 2009, Claimant filed a petition for benefits seeking authorization for psychiat-rically necessary, non-professional attendant care. At the time Claimant was under the care of Dr. Tyson, a psychiatrist authorized by the Employer/Carrier (E/C) to provide treatment, but Claimant unilaterally underwent an examination by Dr. McClane, a psychiatrist. Dr. McClane recommended Claimant be provided attendant care for emotional reasons and to allay her fears. Dr. Tyson opined the care was not medically necessary.
 

 Because of the disagreement between the two physicians, the E/C requested the JCC appoint an expert medical advisor (EMA) pursuant to section 440.13(9), Florida Statutes (2003). Claimant objected, arguing that the 2003 EMA statutory provision could not be applied retroactively to her 1982 accident. Claimant relied in part on this court’s decision in
 
 Southern Bakeries v. Cooper,
 
 659 So.2d 339 (Fla. 1st DCA 1995). The E/C argued that because section 440.13 addressed the procedure whereby a claimant is provided medical care, any changes to section 440.13 were procedural in nature and applied retroactively to dates of accidents prior to their enactment. For this proposition, the E/C relied on the authority of this court’s decision in
 
 Butler v. Bay Center,
 
 947 So.2d 570 (Fla. 1st DCA 2007). The JCC agreed and found that, based on
 
 Butler,
 
 the EMA statute; section 440.13(9), Florida Statutes, could be applied retroactively and appointed Dr. Edgar as the EMA.
 

 Analysis
 

 Although understandable based on the broad language of our decision in
 
 Butler,
 
 the JCC’s reliance on
 
 Butler
 
 to find that section 440.13(9) is procedural is misplaced, as
 
 Butler
 
 addressed only section 440.13(2)(e) and (f), Florida Statutes (2005).
 
 See id.
 
 at 572-73 (holding that changes to section 440.13(2)(c) and (f), which address procedure for authorizing medical providers, are remedial and apply to all accidents, regardless of date). Any references in
 
 Butler
 
 to section 440.13 beyond subsections (2)(c) and (f) are dicta.
 

 We conclude that section 440.13(9) effects a substantive change, using an analysis similar to that which we applied in
 
 Southern Bakeries v. Cooper
 
 regarding section 440.13(5), as that statute addresses an issue much more closely related to the
 
 *581
 
 EMA statutory provision. 659 So.2d 389 (Fla. 1st DCA 1995). In
 
 Southern Bakeries,
 
 this court determined that the 1994 amendment to section 440.13(5), Florida Statutes, creating a new independent medical examination (IME) procedure was substantive because “it alters the parties’ obligation to pay for the claimant’s [IME].” 659 So.2d at 341. We explained that the prior IME statute, in effect on the date of the accident, allowed a claimant to obtain a medical examination by an expert whose fee could be assessed as a cost if the claimant prevailed.
 
 Id.
 
 at 340. Notably, in
 
 Southern Bakeries,
 
 there was no provision generally obligating the E/C to pay for the claimant’s medical examination:
 

 In giving the claimant the right to select an [IME] and obtain such an examination without having to pay for this service, section 440.13(5) departs from the prior law under which the claimant could not always avoid such costs. The cases addressing whether a change in the law should be viewed as substantive or procedural have routinely treated
 
 the entitlement to a service, and the source of payment therefor, as a matter of substance.
 

 Id.
 
 at 341 (emphasis added).
 

 Although the EMA procedure did not exist before the 1994 statutory amendments, “tie-breaker” provisions similar to the EMA procedure have long existed in chapter 440. The statute in effect on the date of Claimant’s accident, section 440.25(3)(b), Florida Statutes (1981),
 
 [1]
 
 provided in part:
 

 When there is a conflict in the medical evidence submitted at the hearing, the deputy commissioner may designate a disinterested doctor to submit a report or to testify in the proceeding, after such doctor has reviewed the medical reports and evidence, examined the claimant, or otherwise made such investigation as appropriate. The report or testimony of any doctor so designated by the deputy commissioner shall be made a part of the record of the proceeding and shall be given the same consideration by the deputy commissioner as is accorded other medical evidence submitted in the proceeding; and all costs incurred in connection with such examination and testimony may be assessed as costs in the proceeding, subject to the provisions of s. 440.13(3)(a).
 

 The deputy commissioner was also permitted to order medical examinations based upon his investigatory authority pursuant to section 440.29(1), Florida Statutes (1981). At that time, a claimant was not required to pay for an examination ordered by the deputy commissioner at the claimant’s suggestion. See
 
 Public Gas Co. v. Monette,
 
 658 So.2d 673, 674 (Fla. 1st DCA 1995) (approving JCC’s appointment of an IME, pursuant to section 440.29(1), Florida Statutes (1991), with physician chosen by claimant);
 
 see also Berry Corp. v. Smith,
 
 576 So.2d 1366, 1367 (Fla. 1st DCA 1991) (holding JCC may order IME pursuant to section 440.29(1), Florida Statutes (1987), but JCC may not require E/C to pay for examination unless, as stated in section 440.25(3)(b), Florida Statutes (1987), there is conflict in medical evidence).
 

 Eventually, the “tie-breaker” provision in section 440.25(3)(b) became the EMA provision codified at section 440.13(9), Florida Statutes (Supp. 1994), and, with the statutory amendments effective October 1, 2003, a significant shift took place in
 
 *582
 
 a party’s burden to bear the cost of the “tie-breaker” examination, when section 440.13(9) was amended to require a claimant to pay for the examination if the claimant made the request.
 
 See
 
 Ch. 03^412, § 15, at 3904, Laws of Fla. As with the IME provision in section 440.13(5) addressed in
 
 Southern Bakeries,
 
 the EMA provision in section 440.13(9) affects the substantive rights of the parties — the entitlement to a service and the source of payment therefor — and cannot be applied retroactively. Thus, the JCC erred in applying it to this 1982 accident.
 

 Because the JCC relied on the presumptively correct opinion of the EMA in denying the claim for non-professional attendant care, this, too, was error. On remand, the JCC is directed to reconsider Claimant’s entitlement to non-professional attendant care based upon the admissible medical evidence.
 

 AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.
 

 WOLF and CLARK, JJ., concur.
 

 [1]
 

 . The statutory language was the same in the sections relevant to this analysis, whether the year was 1981, 1987, or 1991.